Good morning, gentlemen. Sorry for a bit of a delay. We had a case just before you that we were talking about. But we are now ready to proceed. Mr. Levin. Thank you. Thank you very much. May it please the court. Again, my name is James Levin on behalf of the defendants. In the briefs we raised three issues. So I am going to address each of them. The first issue is the state did not prove this case beyond a reasonable doubt. And in oral arguments today I am going to focus on one aspect of that. That is, the state is required to prove that any contact was knowingly done. Under People v. Robinson, the second district case, the state is required to prove that a contact was knowingly and not accidental. So I understand that the issue is viewing the evidence in a light most favorable to the prosecution. But what we have here is a case of total evidentiary insufficiency. Well, Mr. Levin, I understand the possibly accidental or involuntary action. And there is testimony that both Mr. and Mrs. Molina were kind of flailing their arms and they were emotionally talking about this issue. A very serious one for their family. But the police officer noted, although was not able to take pictures, of a blackened eye or a swollen eye. It wasn't black. It was just swollen. How is this going to happen from just flailing of hands? Well, the wife testified that she actually pushed the defendant. And I'm going to get into that more when I talk about claims of error. So are we talking about self-defense? No, I'm not. We're definitely not talking about that. But that was my third issue. But I'd like to get to that after I address the first issue here. Actually, it was evidence of an accidental contact. Now, was this argued to the jury? Yes, it was. The fact that this was unintentional contact? Yes. In fact, the defense counsel argued in his closing that if there was contact, if there was, then it was accidental. There was basically a two-pronged attack. Basically, there was no contact. Or alternatively, if there was contact, it was accidental. So if that's the factual issue that the jury resolved in the State's favor, shouldn't that be something that we consider? Well, there's no reasonable inference that any contact was accidental. I understand the principles of law. If there's a reasonable inference that could favor the State, then the court would be required to make that inference. But didn't the daughter in this dreaded 9-1-1 call, in the dreaded 9-1-1 call, she said that my father punched my mother. Didn't she say that in the 9-1-1 call? I believe she said he hit her, but there's nothing in the 9-1-1 call that said that he did that out of anger, that he did that to injure her, or that he did that as an insulting or provoking contact. And there's nothing in the 9-1-1 call indicating that she actually saw that happen. She didn't say she saw that happen. But isn't that an inference to be made by the jury? I mean, I guess my question is that, sure, there was a lot of conflicting testimony in this case, but isn't it, what's the standard of review there? Well, we have to look at it in a light that's favorable to the prosecution, and we also have to, the court, as a review court, would give credence to any reasonable inferences in favor of the State. So, in other words, if there's a reasonable inference that favors the State, a reasonable inference that favors the defense, the court should go with the State. I acknowledge that against the law. But we don't have any reasonable inference that was done out of anger directed at the wife. No evidence at all. Well, it doesn't have to be anger. It has to be knowing or intentional. Right. But that goes back to my question. I can do this to Justice Shostak if I want to get her attention, and it's not likely I'm going to cause her eye to puff, or even where I touch her to puff. How did this, how did Mrs. Molina's eye get to its circumstance, that the officer saw? Well, we don't know how bad the eye was. We do know that it was puffy, and that's all we know. And it's within a reasonably short distance after that phone call. It's not two hours later. It's not next day. It's within, what, 10 minutes, 15 minutes of the phone call made by Amanda. Well, all we have here is the defendant and his wife, and as I said, in their culture, they talk in very animated ways. If I'm talking, I don't have to use my hands sometimes, but they're actually very close to each other. They're using their hands. They're upset. They're talking in a very animated way. And I can easily see if they're very, very close. In fact, Mrs. Molina said that she made physical contact with the defendant. If they're in a very close proximity to each other, and they're talking in a very animated way, and they're talking, they're right next to each other, and she's talking and he's talking, they're right next to their face, it's very easy for that to happen where a physical contact could be made to happen. What the state says in its brief, and this is a key point, and I think this should be addressed, is that there is circumstantial evidence that he hit her knowingly because he was angry at her, and there's no evidence whatsoever, circumstantial or otherwise, that he was angry. There's nothing in the 9-1-1 tape. The puffy eye doesn't indicate that it was a knowing contact either. I think we have to know the context or the circumstances beyond the puffy eye. And I think it was Mom who brought the defendant into the kitchen to discuss it. So they were alone at the time. No one actually saw it, and that's another reason why there's an evidentiary insufficiency here. But isn't knowledge is ordinarily proved by circumstantial evidence, isn't it? Yes, it is. But here there's no circumstantial evidence to indicate that. Well, you do have the other daughter, Vanessa, who considered it to be serious enough that she stayed with her parents to make sure they were separated and told Amanda to call the police, right? I mean, that's circumstantial evidence that would tend to indicate that there's very serious considerations here. Perhaps there's circumstantial evidence of a contact made that maybe the defendant made contact with. She wants to keep them separated, right? Yes. And she also thinks that the police should be called. Because they're having a very animated conversation. These two people are very emotional, and accidents can happen when they're in close proximity with each other. That would be one inference, that accidents can happen. The other inference would be that my dad just hit my mom, and so call the police, which is what Amanda then tells the police. But knowingly is the element here. So as the state says, and I agree. Why would you call the police if it's not knowing, just because you think it's an accident? Well, because it's a very excited, emotional situation. And if there has been a contact, and they don't know what's going on, they're all a very emotional family, the emotions are swirling around, so they would contact the police. I just don't see, to the state's point, the state says there's circumstantial evidence of a knowing contact because of anger that the defendant directed at the wife. And there's no circumstantial evidence of that either. Well, you have Amanda repeatedly saying that he just punched her in the face. She didn't testify to that. No, she didn't testify to that. But she said that on the tape repeatedly, and to the police officer in the front yard, I think, right? Okay, but she doesn't say that she actually saw it happen. True. In the tape. True. How about, do you think that this might be some circumstantial evidence? When the police came, Amanda came out on the porch, and they shut the light off, so the police, presumably, as the state argued, so the police wouldn't see the eye? I don't think so, because again, we're... It doesn't show knowledge. You know, a reasonable person in that circumstance may not want to involve the police in a family squabble. So that's the way to read that. But the question I have is, does that show that the defendant was angry at Mrs. Molina? Does that show that he did it out of anger? Did he make contact with Sulphur? Did he make contact with her? I don't see any evidence of that at all. Well, I think that it isn't the totality of the circumstances something that the jurors might be able to weigh. Well, they could weigh that a contact was made, but they don't have any circumstantial evidence. You know, as pointed out in the Koplinsky case, 2nd District, 2011, inferences must be based on established facts, not peer-admitted on intervening circumstances. So I rely on that principle, which is also cited in the state's brief. But you keep talking about anger. Anger is not an element of battery. It is not a stated... It can be a disagreement. And there was one here. We know that. It can be, I'm bigger than you are, so I'm going to show you. So you keep saying there's no evidence he was angry. There doesn't need to be evidence he was angry, does there? No, but that's what the state said. The state is trying to justify, say that there's circumstantial evidence indicating it. And frankly, I don't see any circumstantial evidence of anger or circumstantial evidence of anything. If they're close together and they're flailing their hands and they're upset and they're angry, that doesn't... Because of the thought of running away, I don't see any evidence that at all in the tape, in the officer's testimony, in the family's testimony, that he wanted to hurt her, make physical contact, or did it as an insulting or provoking contact. And that's a great theory. That is a good theory. But the jury didn't buy it. So how do we reverse the jury decision? Isn't the standard of review an abuse of discretion? Well, viewing the evidence in light most favorable to the prosecution. Right. So how do we... This district is reversed in, I'm sorry, I can't really pronounce the name, but it's NNUN something. I think it was written by Justice... I know. It's escaping me. Oh, he's not important. I think it was Burkett. Burkett. He's not important. Absolutely true. Absolutely correct. I couldn't come up with it. But in that case, court reversed based on evidentiary insufficiency. So the question is, do we have... We don't have any established facts leading to inferences that he did it knowingly. You're saying those inferences were unreasonable inferences. No, I'm not. No, excuse me, I am. You're saying the inferences that the jury made with respect to the plaintiff's case, the state's case, were unreasonable inferences, correct? Yes. I mean, you can't... If it's... The court would be required to defer reasonable inferences but not speculation. So I have other issues I'd like to cover. I mean, I don't know if I'm going to... I know. I'm going to direct you to 911, which at least is second, I think, in the case. If you want to go to the other one, that's fine. Oh, okay, so... Whatever your order was, let's go to the next one. All right, so briefly under the second one. So I believe the evidence is insufficient, but in the alternative, it's closely balanced. And that would mean any error committed under Issue 2 or 3 would call for reversible error. So under the second issue, we have the 9.1 tape, which is very highly emotional, highly prejudicial. And we have that repeated, not once, not twice. We have it three times and emphasized quite a lot. And there's principles in the law that says that people tend to believe that which has been repeated and place undue weight on something because it's been repeated, not just based on the intrinsic worth of the evidence. People versus Smith. It's stated in my brief. And it's also analogous to reading a transcript based on the amnesty case. In fact, it falls under the purview of that case where there was reversible error. So I would ask that the Court consider the briefs. I want to cover all my issues, so unless the Court has any questions on that one... Well, the only thing, you know, what's the difference between reading, doing a, we'll call it a dramatic reading of a transcript as you're addressing the jury, this is what was said, and listening to that tape? Other than it's, you know, it's still, they can both still be very emotional, and it is still okay to do that or give the transcript if the jury asks for it. It can go back to the jury under appropriate circumstances. Why isn't it an appropriate circumstance here, I guess? Well, my understanding of the law, and please correct me if I'm wrong, is under amnesty. The Court, and there's a case of gross, I believe it was, the Court said that reading a transcript in front of the jury was improper, and the Court in amnesty compared playing the tape to reading the transcript. The error here is worse because we have it done not just once, twice, but three times. But the third time was in response to closing argument, wasn't it? I think the third time was in rebuttal because the defense brought it up, talking about Amanda's testimony and whether she was telling the truth, and went on and on about Amanda's testimony. So I think the trial court let that in the third time in rebuttal in response to an issue that the defense brought up. I don't really, I respectfully disagree. The tape was played during closing argument rebuttal. That was the second time. Rebuttal, yeah. And then the third time was during jury deliberation. Oh, okay, so the second time was rebuttal. Yes, second time. Right, you're right. I apologize. The third time they asked for it. But the state didn't need to play that tape, and they didn't rebuttal apparently. The defense doesn't have an opportunity to respond. But the defense raised the issue. They opened the door, basically, is what the trial court said, correct? I didn't see any opening the door whatsoever. The defense was simply arguing the credibility of the witnesses. They were bringing forth their accident defense, bringing forth that there was a total lack of evidence, no witness testified in court under oath about the battery. There's no opening the door here at all. Does it make a difference in that the recording wasn't all that easy to understand because Amanda was so emotional and crying and sobbing and all that? It's pretty understandable, I think. I know the tape is a part of the record. I heard it. And I'm not disputing the fact that it was played one time. Well, why does that playing it twice is harmful to the rights of the fair trials? But three times, very, very harmful, especially in light of the closely balanced nature of the evidence and it's not insufficient. So when the jury asked for it, are you saying that the judge, the proper response of the court would have been to deny it and say that you've heard it? Well, if you have all the evidence before you, you know, have the typical point-of-play response that I see trial courts do all the time when they have that kind of a question. I may be out of time, but may I address number three? I was telling Marshall here, I'm going to give you about another two and a half minutes to get to your third argument. So he's going to put the time in at three, and you go ahead. I'll try to talk reasonably quickly. So there are four misstatements of law here. The cumulative effect deprived of the fair trial, the individual effect deprived of the fair trial. Statement one, the state says if you, in order to find a defendant guilty, you have to find a defense witness's lie. Well, that's a, that distorts the burden of proof. Isn't that what she had, the defendant's attorney had just argued? I thought she had just argued that also. No, the defense attorney didn't say what was required. The defense attorney certainly did not open the door. The defense attorney would quote a paragraph in the brief that was talking about credibility of witnesses. But when the state says to find the defendant guilty, you must do A. The key words are to find the defendant guilty. So there, the state doesn't have license based on what defense counsel did, which is talk about credibility, to distort the burden of proof. To find the defendant guilty, you have to find the essential elements. Okay, so I'd like to go on to issue two, which is that we're, oh, the defense makes an argument in closing about the wife pushing the defendant. And the state jumps up and objects and says, there's no self-defense issue here. And so the law says you can't consider it. Judge overrules the objection, which makes it even more harmful. So, but that's not defense theory. Defense theory isn't self-defense. Defense theory is accidental content. And they said that. And so that objection should have been sustained because the defense should have been entitled to argue his theory of the case. And what the state did was prevent that from happening. His theory was that the content was accidental. So it was perfectly relevant to that defense to talk about the pushing and jumping that was going on because they're in close proximity and content could have been made. So under People v. Carvajal and Glasper, which is cited by the state, if state says it's unlawful, it's not legal for the defense to argue his theory of the case, that's a serious misstatement of the law. So third issue. Third issue is the state says that the entire class of victims, domestic violence victims, are not worthy of release because they have an incentive to go ahead and protect the defendant. So I have a problem with that because the state is in effect vouching for the credibility of witnesses. It's misstating the law. It's denigrating. But didn't the state kind of compare like a burglary victim versus domestic violence? And he said the word domestic brings in. He's trying to point out the bias with a family member. Is that what he's trying to do? Well, it would be okay to point out the bias of a family member to argue the individual facts of the case. There's no problem with that. But counsel's argument, trial counsel, for the state is much broader than that because they argue basically a principle of law and elevate it and say that all domestic violence victims are not to be believed because they have an incentive to implicate, to protect the defendant. So I defer to my brief. I'm going to go to the fourth issue very briefly, which is states that circumstantial evidence, broadly speaking, again, is more credible just because it is circumstantial evidence than direct evidence. And that's also incorrect principle of law. What the correct principle is the state is supposed to evaluate the evidence on an individual basis. Is this evidence credible? You mean the jury? I mean the jury should evaluate. Excuse me. I'm trying to talk really fast. But it's similar to what I just argued. The circumstantial evidence, the state says, is such because it's intrinsic nature. It's much more credible because it doesn't have a bias to lie. It has more credibility than direct evidence. And that's incorrect as a matter of one. Circumstantial evidence does have an incentive to lie. The defense theory of the case was that Amanda could have lied on the tape or she could have had bias because she had anger at her father. So circumstantial evidence does have bias. And for the state to say all circumstantial evidence is great because it's much more believable than direct evidence in which way the jury functions in this statement of the law. Wasn't the statement often circumstantial evidence can be the most powerful? Yes. I mean that was the statement, right? It's not like it always is or it has to be. It was like often circumstantial evidence can be the most powerful. I mean that's fair argument, isn't it? That's different than it is more important than direct evidence because direct evidence can be boring, can be just there, can be physical. It's not as powerful. And the word used was can be more powerful. So what's wrong with that? Well, what the state should have said is circumstantial evidence in this case applies to this case. It's more powerful because of A, B, and C. But to make a broad statement and it wasn't just one offhand sentence, but it goes on for two or three pages that circumstantial evidence does not have a bias to lie, does not have any biases. That's what it says. There are many general principles that apply to every case. It's circumstantial. In fact, the statement is brief. Inside a Seventh Circuit case, I believe, they try to bolster the idea that circumstantial evidence is intrinsically better. But that's not consistent with Illinois law. There are equal ways. It's up to the jury to decide what's more credible, this circumstantial evidence or this direct evidence. They can't just say that circumstantial evidence means it's intrinsically better, and that was their kind of backdoor example. It goes to the 9-1-1 tape in a very closely balanced case. So because of all the jurors, because they were objected to, and because of the closely balanced nature of the evidence, it was a factor that contributed to the conviction, all these errors cumulatively or individually, I would ask that this Court find a reversible error and a reversible conviction. Thank you very much. Thank you. You'll have an opportunity to respond. Okay. Thank you. All right. Mr. Taylor. Good morning, Your Honors. Good morning. My name is Ivan Albert Taylor, Jr., honoring on behalf of the State. In this case, the State is asking the Court to affirm the defense of conviction of domestic battery. First, turning to the sufficiency of the evidence claim, the State's argument that there was sufficient evidence to produce injuries in order to find the defendant guilty of domestic battery. First and foremost, as to the defendant actually knowingly pitting his claim. Yeah. How do you show, prove to us, pursuant to counsel's argument, there was a knowingly, this was knowingly. What evidence do you feel proved to the jurors that this was knowingly? Well, first of all, in this situation, the defendant was arguing first with his second daughter, Leah Amanda, arguing, they were yelling each other's faces. The wife had to physically put the defendant into the kitchen where the argument continued. The oldest daughter was upstairs with the youngest daughter, eventually came downstairs because of how much they were arguing and how loud it was to try to at least resolve or at least calm down the situation. And during the course of this, the second daughter comes back inside, the yelling was so loud, and is told by the first daughter to call the police. And the second daughter told the police officer when he arrived, my dad hit my mom. Is there any evidence that Amanda actually saw the hit, or is she responding to her sister saying, go call the police? In the 911 call, she said, my dad hit my mom, but I believe the written statement was that she saw the red-scorned puffy eye, and her father said, I'm sorry, and that he didn't mean to. And that he what? Didn't mean to. Oh, didn't mean to. So that right there, the written statement from Amanda. So he admits that he hit, but he doesn't admit that it was known. He said, I didn't mean to. So as to making it unknowingly, even though the white testify that they, in their culture, they speak amicably, in order to have enough force in one's movement to cause one's eye to become red, puffy, and swollen within ten minutes before the police arrive and actually witness the red, puffy, swollen eye, there has to be enough force that it's hard to say that was accidental. Now the jury heard that there was a lot of crying going on during the course of this few minutes of conversation, so to speak. Crying, we all kind of know that crying causes red, puffy eyes. Was there any testimony about, from the police officer, I guess it's Officer Caduto, that she recognized that it was a hit or crying or? I believe it was just the one eye that was, I think he said he was swollen at one point. So it was just the one eye, not both eyes. So if there was crying, we would expect both eyes maybe to be impacted by it. But crying, that kind of red eye is more like the eyes themselves are red as opposed to the skin around the eyes. But that, and the jury heard all this information and it determined that that was sufficient evidence that the defendant had normally hit his wife. Yes, the statement that Circa had this annoying minute anger, that's just more of a, the minute anger part is just more an explanation of the situation that was occurring since the defendant was yelling at his daughter, was yelling at his wife, and he wanted to intervene in this yelling situation. People normally yell when they're upset or angry. So you're not saying that angry is an element of this offense, it's just you're trying to describe the circumstance surrounding. But it is just as likely the circumstance surrounding this was concern and because of their emotional situation, it was just an expression of concern and everybody was heightened because if I remember the facts correctly, this young girl was staying with a boy, which would be very, was alleged to have been staying with a boy,  I think she left the house and was gone for three days. Right. Okay. Moving on to the second argument, the another one of the tapes. First and foremost, the state would like to point out that the correct standard of review is abuse of discretion, not de novo. The defense tried to argue the court's own review, however, the basis of that argument doesn't really stand up from this court's own case law. Well, did the court abuse its discretion in letting the jurors hear this tape three times? I mean, the first time, maybe. The second time, you can argue that it was really in rebuttal, but how about when the jurors asked for the tape? Why give it to them three times? Well, the first time was just that it was interesting evidence to the jury for the first time. The second time, as you know, Justice Shostakovich, that the defense counsel was attacking the credibility of Amanda and we haven't had a statement from, in trial, we also have a statement from the non-room recording. So in rebuttal, that's when the prosecutor plays the non-recording, which is allowed to do. And even though, and the trial court allowed it because it believed that since the jury should have, be able to hear all the evidence, it's allowed to make its own determination. As for the jury deliberations, the same reasoning was used. The jury needs to have all the facts and it should have the evidence in order to come to its conclusion. How is that not overkill? I mean, she was highly distraught in the first one. I mean, isn't that, doesn't it get to the point where the prejudicial value outweighs the probative because of this highly charged emotional situation? She may have been distraught in there, but then I believe the defense counsel had argued that she was lying because she was distraught and emotional and was upset at her father. And that doesn't hurt the defendant. It doesn't hurt the defendant when the jury hears the emotion and they compare that to the testimony within the trial itself. In the judge, the trial judge says, I think, they've one way or other got to find that Amanda was either lying on the stand or lying in there and I think it's the tone of the voice of the 9-11 that's important to them. They had heard her on the stand and I assume we don't have any real record that she was upset when she testified, although I suspect there was some element of that being in front of a jury and her father being accused of something, but there was clearly a difference in her testimony, the tone of voice of her testimony and the tone of voice of the 9-11 call, correct? The 9-11 call. All right. The jury heard Amanda's testimony. They heard Vanessa's testimony. They heard Marion's testimony, but they only heard it once. Correct. So doesn't this place undo importance on this particular piece of evidence by letting the jury hear it three times? I understand the significance of it, but isn't there that danger of the jury emphasizing it then because they've heard it three different times? That's why we defer to the trial court to come to a nation where that should be heard. The trial court has control over how evidence is presented to the jury throughout the entire process and trial court determined that it wouldn't be only prejudicial. The defense counsel at the time argued it would be prejudicial, but the court determined it wouldn't be. It was that jury, that they wanted your submission, that they should have it, to assist them in the deliberation process. And as to hearing the other testimonies, if you listen to the recording, it's not the easiest to understand what's being said. Amanda was extremely emotional, and it's not necessarily easy to understand exactly what's happening the first time. If the jury had asked to see transcripts of the testimony from the other people, that's a different situation, which the trial court may or may not have allowed, but that didn't happen here. They wanted to try to hear this recording one more time. The court agreed and allowed jury to come into the courtroom, but the defense counsel, the prosecutor, defended there. They played the tape one more time, then went back to deliberating. Let's, can we move on to the issue of where Mr. Vine indicates that you're kind of lumping, the state lumped all victims of domestic abuse into the same category. I mean, I know that you have the ability to show bias, but the prosecutor in this case seemed to go a little bit beyond the argument of bias, but did he not lump the defendant's family with all families of domestic abuse? I don't believe the prosecutor went that far in lumping all families of domestic abuse. I think the prosecutor was just trying to highlight that. For domestic abuse for this family, that they were emotional, their family, like all families, they tend to love each other, they want the best for each other, and as such, that's where bias comes from. Any family's not going to have any bias, at least highlighting for this particular family the bias they have for each other. I'm not sure you mentioned about all domestic abuse cases. Well, didn't he compare, I think it was a burglary, two domestic abuse cases and the witnesses' credibility, or witnesses' credibility in those cases? Oh, yeah, that was an invite response from what the defense counsel said when he was attacking Amanda's testimony. Both attacking Amanda's testimony, I believe, if I recall correctly. I think you're right. The defense counsel had indicated that because the nominal reporting did not involve any test, any swearing of an oath to tell the truth, there's no reason to believe that testimony. It should be the testimony that's occurring right now within the actual trial itself. Getting back to your statement about the fact that there's some bias with these family members and the prosecutor argues that that's because of the word domestic, the victim and the witnesses have a family member, they love them, they care about them. All that stuff seems like it's fair game. But when he starts saying that they're not cooperating with the state's attorney's office and whether or not most witnesses in domestic violence cases cooperate with the state's attorney's office, isn't that all outside the record? I mean, where does that come from? How can he make a claim, the prosecutor, that, oh, witnesses in these kinds of cases, you know, folks, they're not going to cooperate. That just seems like it's very much outside of what should have been argued about the evidence in the case. It does seem to go in a strange direction a bit. However, prosecutors argue in a wide latitude in their closing arguments. And in this particular case, the prosecutor was, I guess, giving personal examples of what he has dealt with in his time as a prosecutor. Is that our standard? I mean, that seems a little loose. Well, and also the standard is that it's not just what the prosecutor says. It has to be prejudicial. That actually impacted the defendant's rights in some way. And this particular statement would not have impacted the defendant's rights. Your opponent relies on both Davis and Valderee for the proposition that the prosecution voiced their own personal beliefs at this point. How do you distinguish those cases? Or can you distinguish those cases? Unfortunately, this time I'm linking it on the fact that those were other cases. Other than just the proposition they had. What I can say is that the statement the prosecutor was saying about what happens in other cases, that's a small fraction of the entirety of his closing. And the closing we're looking at is just a rebuttal closing, not even the initial closing. For the majority of this rebuttal closing, the prosecutor has to try to respond to the statements being made by the defense counsel, pretty much in every respect. This small portion is not going to, in and of itself, hurt the defendant. I think I'm going to touch upon the fourth statement that the defendant brings up. Circumstantial patterns can be the most powerful. The defense counsel is in the statement of law. And I think what the prosecutor was trying to get at in this situation is just speaking as to biases. The defense counsel had tried to bolster the credibility of the witnesses on the stand, saying how to believe them now. They're saying that there was no domestic battery here, so believe them. And while the prosecutor was trying to indicate the other evidence, these people who said there was no domestic battery, they have a bias because they're family members. This other evidence, this circumstantial evidence, showed that there was a domestic battery. So try to examine this as well. As to highlighting federal court cases, this is more indicating that if you were to believe how the defendant interpreted the prosecutor's words, if the prosecutor had somehow stated that circumstantial evidence is better than all other evidence in all situations, there is an aggregate of evidence. You may proceed. Finish your answer. The various federal reports have indicated that circumstantial evidence can be more reliable in certain situations. And this is a situation here where substantial evidence has highlighted that, unlike the testimony of the individuals who may have a bias, it's hard for substantial evidence to be biased in particular. Well, part of the problem, as I indicated with Mr. Levin, is direct evidence is often physical. It's this is this long. It was this far for the, you know, the offender to walk to get to this. That's really, that's kind of boring when you think about it. But here we have a very emotional tape. And it might be good, it might be bad, but it's certainly more powerful just listening to something like that or seeing the young women as they testify and seeing the mother as they testify. So, I mean, I don't think or do you think that the prosecutor is misstating when he says it can be more powerful? Counsel says it should have been limited. In this case, it is more powerful. What's the difference and why? Well, there's not much real difference in that. That's just more of a minding distinction and words used. Especially since the full statement is that often evidence can be more powerful. It's not saying it must be. It's not saying it has to be. It's that that possibility exists. And is it inconsistent with any specific jury instruction that comes to mind or that you've reviewed? I don't think there's a jury charge to indicate that. Also, case law shows that all forms of evidence are equal to each other. Now, if you need a little more time, we'll give you to wrap up. Or if you need some time to think, that's fine. I'll give you about the same two or three minutes that we allowed Mr. Leff. Thank you, Your Honors. Unless there's any more questions, I'm going to briefly conclude. All right. You may conclude. The people asked this court to affirm the defendants' convictions for domestic battery. There was sufficient evidence for it to be found beyond a reasonable doubt. The judge did not abuse discretion when it allowed the prosecutor to play the 9-1-1 tape during a closing rebuttal and did not abuse discretion when it allowed the jury to hear one more time during deliberations. And finally, the prosecutor did not make any mistakes of law or make any improper statements that were so prejudicial to allow rehearsal within the closing rebuttal. Thank you. Thank you. Thank you. Mr. Muzzin. I'd like to make five or so points. I'm going to try to make them real fast to get it within my time. So very briefly on the second issue, yes, Amanda was very emotional. That makes it even more prejudicial than reading a transcript. In Amnesty v. Amnesty, a reversal error occurs much worse because we have it repeated three times instead of twice and we have emotionally charged 9-1-1. They need to hear it three times. She clearly said, my dad hit my mom. They only needed to hear it once. When they hear it three times and it's very emotional, the jury is liable to make their decision based on emotion and not the evidence. So it's very highly prejudicial. Well, the judge's position was, especially for that third time and letting them hear it during deliberation, is their job is to determine who is telling the truth and who is not telling the truth. And they have two situations with reference to Amanda, one on the tape where she was clearly not under oath and one in a courtroom where she was. And his position was they had the right to review that to determine who was telling the truth. What's the abuse of discretion? They had the right to review it once. When they do it a second time, it crosses the line, especially because it's emotional. You're not just reading a transcript. Plus, it's the second time. A third time, it goes way beyond. The jury knows. They heard it once. Amanda said, my dad hit my mom. I heard the tape. You only need to hear that once. And it's very clear to me what happened when I heard it once. But because it's repeated not once, three times, and I would emphasize, more prejudicial because it was emotional. Well, you're not contesting, though, whether or not he hit her, right? So how can that be so prejudicial if the jury knows that he hit her and actually the defense attorney admitted that he hit her, right? It's just whether it's intentional. So what's the difference? If I recall, I don't think there was any admission made by defense counsel. Well, didn't he say the whole issue is whether it was intentional or not? No, that was one aspect of it. There's a two-pronged attack. One is there was no hitting going on. In fact, the witnesses, that's why it's closely balanced. The married wife said I wasn't hit, and the other witnesses said I didn't see anything. So there is a question whether she was hit. Well, she had a red puppy eye. And that's true. But we don't know the size. We don't know any details surrounding that. But I emphasize the knowing aspect in my argument. But I'm not going to concede there was no hitting. How does the 9-1-1 tape indicate that it's knowing? It doesn't, right? It just said he hit my mother. The tape doesn't indicate it's knowing. So I'd like to proceed to Issue 3. And the prosecutor says, the fact that the victim claimed to be pushing the defendant in the kitchen is legally irrelevant in this case. So the state's attorneys are distorting the law and making a misstatement. And then it says there's no assertion of self-defense. Well, that's true. There's no assertion of self-defense. But that misstates the defendant's argument. The defendant's argument is that it's highly relevant to the accidental nature of the conflict because both parties are very close. And an accident can happen when they're that close, when the wife is pushing the defendant and the result is flailing in the air. So I'd like to go on to another comment, and that is the state says the defense attorney's closing is based on an assumption. Well, that's not what the defendant said. I'm talking about the domestic violence victims being unworthy of belief. And then at page 17 of my brief, I point out why are they different because of the word domestic. So he's lumping everything into a class of victims. He's attacking a class of victims of domestic violence altogether, not just arguing individual facts in this case. So, again, that's a wrong statement of law. Proceeding on. Well, it's not so much a statement of law as it is a statement of his own personal beliefs, and that's not a statement of law. Invading the province of the jury, the jury is supposed to decide the individual facts, decide who's credible or not. I mean, he maybe should not have done it, but we're not talking about misstating the law, and you seem to keep running over those two. This was a preference or a personal belief that he is expressing that is not a misstatement of the law. Yes, and it's prejudicial. And the last point I'm going to make is, from me, the prosecutor says circumstantial evidence has nothing to do with it. It's also not biased or prejudiced in any way. It doesn't change the story. So, again, the counsel is lumping circumstantial evidence into one category. So I'll conclude by stating, because the evidence is closely balanced in this case, any error hits the scale. And I would argue that since the second issue and third issue, we all have very serious errors there involving issues of law, I would argue that that can, in fact, contribute to the verdict. And one individual comment would be enough to reverse the error here on any one point, but here we have all of them together. So we would individually or cumulatively be able to reverse the error here. Thank you so much. Thank you, counsel, for your arguments today. We will take the matter under advisement. We will give you a decision accordingly, and we are now going to stand adjourned.